IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CITY OF CEDAR RAPIDS, IOWA,<br><br>Plaintiff,<br><br>v.<br><br>JARVIS CONSTRUCTION,<br><br>Defendant.<br><br>------------------------------<br><br>JARVIS PAINTING INC. d/b/a<br>JARVIS CONSTRUCTION d/b/a<br>JARVIS PROPERTY<br>RESTORATION,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>CITY OF CEDAR RAPIDS, IOWA,<br><br>Counterclaim Defendant. | No. C10-0073<br><br>RULING ON MOTION TO STRIKE |

TABLE OF CONTENTS

I.   INTRODUCTION .................................... 2

II.  PROCEDURAL HISTORY ............................ 2

III. RELEVANT FACTS ................................. 4

IV.  DISCUSSION ...................................... 6
     A.  *Expert Testimony Regarding Construction or Interpretation of the*
         *Contract* ................................... 6
     B.  *The Scope of Marsh's Expert Testimony* ........ 7
         *1.  The Marsh Report* ....................... 7
         *2.  The Marchin Report* ..................... 9
         *3.  The Marsh Rebuttal Report* .............. 10
         *4.  Analysis* .............................. 11

V.   ORDER .......................................... 12

## I. INTRODUCTION

On the 5th day of July 2011, this matter came on for hearing on the Motion to Strike and Exclude Expert Testimony (docket number 22) filed by Defendant Jarvis Construction on June 8, 2011. The Plaintiff, City of Cedar Rapids, was represented by its attorney, Mohammad H. Sheronick. Jarvis was represented by its attorney, Stephen W. Tyler.

## II. PROCEDURAL HISTORY

This case was initiated on April 26, 2010, with the filing of a petition for declaratory judgment in the Iowa District Court for Linn County. Plaintiff City of Cedar Rapids, Iowa ("the City") asked that the Court declare and construe the parties' rights and duties pursuant to a "Time and Material Contract" attached to the petition. The City asserted that "actual controversies" existed between the parties "on the issues of whether the Contract permits the Defendant to charge the Plaintiff for double time and overtime labor costs and also as to the sufficiency of the documentation submitted with invoices for payment."

Defendant Jarvis Construction removed the action to this Court on May 17, 2010. On that date, Jarvis filed an answer denying the City's claims, and asserting certain affirmative defenses. In addition, Jarvis brought a counterclaim, alleging breach of contract and seeking monetary damages. The City denied the material allegations of the counterclaim in an answer filed on June 3, 2010.

On July 28, 2010, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties.[1] Among other things, the Scheduling Order established deadlines for disclosing expert witnesses and for the completion of discovery. In reliance on the pretrial deadlines, a bench trial has been scheduled before Chief Judge Linda R. Reade on September 19, 2011.

---

[1] The only amendment made by the Court was to extend the trial ready date by one month, since the proposed date was only 90 days after the completion of discovery, instead of the 120 days required by Local Rule 16.h.

On October 26, 2010, the City filed a motion to extend the deadlines for disclosure of expert witnesses by approximately six weeks. The movant made no effort to establish good cause for an extension of the deadlines, however, and the motion was denied without prejudice. The City then renewed its motion, stating that its expert witnesses – who were conducting a forensic audit – required additional time. Jarvis had no objection to the extension, and the deadline for disclosing the City's expert witnesses was extended to December 15, 2010. Similarly, the deadline for disclosing Jarvis' experts was extended to January 15, 2011, with the deadline for disclosure of rebuttal experts extended to March 1, 2011.

Apparently, the City served its expert witness disclosure by the December 15, 2010 deadline. The attached report was identified as a "draft" report, however, and did not fully comply with FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B). On January 5, 2011, Jarvis filed a motion seeking a status conference to discuss the shortcomings in the documentation and "to discuss how delays of the Marsh report may require other adjustments to the trial scheduling order currently in place." Following a telephonic status conference on January 7, 2011, the Court gave the City until January 24, 2011 to serve "its experts' *final* report, together with any supporting documents." Jarvis was given until March 1, 2011 to disclose its expert witnesses. The deadline for disclosure of rebuttal experts was extended to March 15, 2011. The discovery deadline (April 1, 2011) and the deadline for filing dispositive motions (May 1, 2011) remained unchanged. On March 25, 2011, the parties jointly filed a motion to extend the discovery deadline until April 21, 2011. Finding that the joint motion failed to establish good cause for extension of a deadline which was established approximately eight months earlier, the request was denied.

On June 8, 2011, Jarvis filed the instant motion, requesting that the Court prohibit the City's experts from testifying regarding "new claims" disclosed initially in their rebuttal report, and that they be prohibited from rendering any legal opinions regarding the parties' contract.

3

## III. RELEVANT FACTS

Many of the facts underlying the instant motion are undisputed and may be briefly stated as follows: In June 2008, the City suffered catastrophic losses as a consequence of a historic flood. As part of its recovery efforts, on June 25, 2008, the City executed a "time and material contract" with Jarvis.[2] In brief, Jarvis agreed "to furnish all labor, material, equipment and subcontracted items necessary to complete the work" described in the "scope of work" attached to the contract. It is apparently undisputed that Jarvis performed work pursuant to the contract at six locations.[3] Simply put, the City claims that it was overcharged by Jarvis.

On December 15, 2010, the City designated Jeb McPherson and Debra Gallagher of Marsh USA, Inc. as its expert witnesses. McPherson and Gallagher are associated with Marsh's "forensic accounting and claims services" practice. They were retained to conduct a forensic audit of the Jarvis account.

On January 18, 2011, the City served Jarvis with a report prepared by Gallagher and McPherson, dated January 12, 2011 (hereafter, the "Marsh Report").[4] After reviewing its "scope of work" and its "audit steps," Marsh summarizes the invoices submitted by Jarvis for each work site, and then opines regarding the validity of those claims. According to the Marsh Report, the invoices submitted by Jarvis for all locations totaled $11,903,486.03. Marsh believes that the authorized charges are $11,575,501.42, for a reduction of $327,984.61 (2.76% of the amount invoiced). In addition, however,

---

[2] A copy of the contract is attached to the instant motion as Exhibit B. *See* docket number 22-3.

[3] The "scope of work" was not included with the time and material contract attached to the instant motion as Exhibit B. However, a copy of the contract, complete with the scope of work, is attached to the City's Petition for Declaratory Judgment. *See* docket number 4. According to the Marsh Report, work was done at the Cedar Valley Montessori School, Five Seasons Transportation, City Hall, Police Department, Welcome Center, and Parking Garage.

[4] A copy of the Marsh Report, including the cover letter and attachments, was filed with the instant motion as Exhibit A. *See* docket number 22-2.

Marsh concludes that Jarvis improperly charged for overtime and double time for subcontractors ($344,582.92) and there was a "markup subcontractor redundancy" ($862,383.28). Including those items and sales tax, Marsh identifies the "total disputed amount" at $1,501,682.33.

On March 2, 2011, Jarvis identified three experts: John Marchin, Matthew J. Watson, and John C. Minor. In his report, Marchin challenges the conclusions reached by Marsh.[5] Marchin states that he "do[es] not take issue with Marsh's accounting, but instead with Marsh's underlying rationale for why Jarvis is not entitled to certain amounts." Marchin asserts that the Marsh Report "well goes beyond a forensic accounting" and "provides opinions on the terms of the contract, the intent of the contract, and the intent of the parties."[6] Marchin concluded that the charges submitted by Jarvis were "reasonable and consistent with industry norms and standards."

Marsh responded with a second report (hereafter, the "Marsh Rebuttal Report"), addressing Marchin's criticisms of its first report.[7] Initially, Marsh explains further the conclusions reached in its first report. In addition, however, Marsh offers two "amendments" to its initial report. Specifically, Marsh concludes that Jarvis' 20% markup on unscheduled equipment charges and material charges is "duplicative, excessive and unreasonable." The markup on unscheduled equipment alone is $677,849.21. After various other adjustments, Marsh places the "total revised disputed amount" at $2,020,970.28.

---

[5] A copy of Marchin's expert report is attached to the instant motion as Exhibit C. See docket number 22-4.

[6] See Expert Report of John Marchin (docket number 22-4) at 1.

[7] A copy of the Marsh Rebuttal Report is attached to the instant motion as Exhibit D. See docket number 22-5.

5

## IV. DISCUSSION

In its instant motion to strike, Jarvis asks that the Court enter an order granting it relief in two areas: First, Jarvis asks the Court to strike those portions of Marsh's Rebuttal Report that "advance new argument," and prohibit any expert testimony on those issues at trial. Second, Jarvis asks that the Court enter an order prohibiting the City's expert witnesses "from testifying at trial about their interpretation of the parties' contract and its legal effect." Because there does not appear to be a substantial dispute regarding the second issue, the Court will address it first.

### A. *Expert Testimony Regarding Construction or Interpretation of the Contract*

One of the principal disputes in this case is whether the parties' contract requires the City to pay overtime and double time, as included in Jarvis' invoices. Apparently, labor rates were charged pursuant to a schedule, which the City argues is inclusive of the amount which Jarvis paid to the worker, the cost of fringe benefits, and any profit and overhead. That is, the City asserts that the scheduled rate included the prospect that Jarvis may have to pay the worker overtime or double time. Jarvis argues, on the other hand, that the contract requires the City to pay overtime or double time in those circumstances when it was incurred.

In reaching their conclusions regarding the amount properly owed, Marsh assumed that overtime and double time were not payable under the contract.[8] Jarvis asserts that Marsh should not be permitted to offer a *legal* opinion regarding the terms of the contract. The City does not disagree. At the time of hearing, the City conceded that Marsh is not permitted to testify whether the contract, in fact, requires the payment of overtime and double time. Instead, Marsh is permitted to testify regarding the amount owed *if* overtime and double time are not payable. This is a mathematical calculation which will assist the Court after the Court determines whether overtime and double time are properly paid

---

[8] In its report, Marsh states: "*At the request of the City*, Marsh calculates the value of the pure overtime and double time in each invoice received from Jarvis." *See* Marsh Report (docket number 22-2) at 8. (emphasis added)

pursuant to the contract. Jarvis agreed at the hearing that this type of hypothetical question is permitted.[9]

### B. The Scope of Marsh's Expert Testimony

Next, Jarvis asks that the Court limit the City's expert testimony to those opinions set forth in Marsh's initial report. That is, Jarvis argues that Marsh's Rebuttal Report "went well beyond rebutting or contradicting Mr. Marchin's expert report by asserting new claims and wholly new expert opinions." The City argues, on the other hand, that the opinions expressed by Marsh in the rebuttal report are simply intended to rebut the opinions of Mr. Marchin.

FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(D)(ii) requires a party to timely disclose expert testimony which "is intended solely to contradict or rebut evidence on the same subject matter identified by another party."[10] Jarvis asserts, however, that Marsh's opinions are not proper rebuttal and, moreover, the new opinions expressed exceed the scope of proper supplemental reports, as authorized by Rule 26(e). To resolve this issue, the Court examines the opinions expressed in the respective expert reports.

### 1. The Marsh Report

In its initial report, Marsh reviewed the invoices submitted by Jarvis for each of the six work sites. While a number of issues are addressed, the principal differences between the amount invoiced by Jarvis, and the amount deemed legitimate by Marsh, involve (1) the charging of overtime and double time, (2) the labor rates charged, (3) whether

---

[9] While not specifically raised in Jarvis' instant motion to strike, the Court and counsel also discussed the scope of expert testimony permitted if the Court allows extrinsic evidence for the purpose of interpreting the contract. (For example, may a qualified expert testify as to a "standard practice" in the industry?) The issue was not briefed, however, and the Court makes no judgment in that regard.

[10] Because the parties conspired to ignore the Court's Order regarding pretrial deadlines, there is some question as to whether Marsh's Rebuttal Report was timely served. In its reply brief, however, Jarvis makes it clear that it is not challenging the testimony on those grounds. Accordingly, the Court does not address the timeliness of Marsh's Rebuttal Report.

equipment and materials were properly charged as "scheduled" or "unscheduled" items, (4) the "general markups" charged by Jarvis, and (5) the substantial use of subcontractors.[11]

According to Marsh, Jarvis overcharged its labor in the amount of $49,451.93. While a small portion of the variance apparently results from "common issues such as missing time sheets, rate classification issues, hour variances from labor summary and daily time cards, illegible time cards, etc.," the vast majority of the difference stems from Jarvis' inclusion of overtime and double time.

Next, Marsh asserts that by charging "scheduled" equipment at an "unscheduled" rate, Jarvis overcharged $91,316.55. Of that amount, some is reflected in the "direct cost" resulting from quantity variances and/or rate variances, while the balance is reflected in the "indirect cost" of Jarvis charging a 20% markup on "unscheduled" equipment. That is, the contract permits a 20 percent markup on unscheduled equipment, but does not permit any markup on equipment charged pursuant to the schedule. Similarly, Marsh asserts that Jarvis overcharged $4,460.48 by identifying scheduled material as unscheduled material.

In its initial report, Marsh noted Jarvis' invoices for subcontractors, totaling $5,616,267.85. Marsh opined that $5,559,847.28 was authorized, resulting in a difference of only $16,420.57. Apparently, the difference involved minor variances between bills submitted by subcontractors and the invoices submitted by Jarvis. Similarly, amounts billed by Jarvis for supplies, per diem, hotel, administration, and demobilization resulted in only small adjustments. In fact, it would appear that Jarvis undercharged $1,415.32 for those five categories.

Next, Marsh identifies "markups," and concludes that Jarvis overcharged $167,750.22. The initial report is imprecise regarding what "markups" this figure is intended to represent. As set forth above, the initial report suggests that the variances for equipment and material included a "direct cost," consisting of quantity variances and/or

---

[11] *See* Marsh Report (docket number 22-2) at 4-6.

rate variances, and an "indirect cost," constituting Jarvis' markup on unscheduled equipment and materials. In its rebuttal report, however, Marsh seems to suggest that the equipment and material variances were determined "before applying markups."[12] That is, it would appear that the markups resulting from the alleged misidentification of equipment and material as "scheduled" or "unscheduled" is found in this part of Marsh's accounting.[13]

Finally, in its initial report, Marsh asserts that $344,582.92 was improperly invoiced for "OT/DT for Subcontractor" and an additional $862,383.28 can be attributed to "Markup Subcontractor Redundancy." The first figure apparently represents overtime and double time charged by subcontractors, while the second figure represents the 17.7 percent markup charged by Jarvis for work performed by subcontractors. With a small adjustment for sales tax, the total disputed amount, according to Marsh's initial report, is $1,501.682.33.

### 2. *The Marchin Report*

Jarvis' expert, John Marchin, states in his report that "[m]y opinions of Marsh's report do not take issue with Marsh's accounting, but instead with Marsh's underlying rationale for why Jarvis is not entitled to certain amounts."[14] Specifically, Marchin disputes Marsh's deduction for overtime and double time.

> Charging overtime and double time for emergency restoration services is standard practice in the restoration industry, especially during jobs classified as catastrophic.
>
> Due to the size and severity of the City projects, overtime and double time was required to minimize the loss to the City.

*See* Report of John Marchin (docket number 22-4) at 2. Moreover, Marchin disputes the deduction for "subcontractor redundancy," noting that "[t]he contract does not require

---

[12] *See* Marsh Rebuttal Report (docket number 22-5) at 8.

[13] The initial report is confusing and, unfortunately, counsel's efforts at the time of hearing to clarify the report were mostly unavailing.

[14] *See* Report of John Marchin (docket number 22-4) at 1.

Jarvis to self-perform a certain percentage of work, nor does it limit the amount of work Jarvis can subcontract." *Id.* Similarly, Marchin believes that Marsh improperly reclassified certain equipment and materials as "scheduled," rather than "unscheduled." According to Marchin, Jarvis "is in a better position than the authors of the Marsh report to determine what equipment and materials are provided for under the GSA schedules." *Id.* at 4.

### 3. *The Marsh Rebuttal Report*

In its rebuttal report, Marsh spends the first nine pages responding to Marchin's complaints and otherwise clarifying its calculations. However, Marsh then concludes "[u]pon further review" that it "entirely disagrees with the reasonableness of Jarvis applying 20% markups to all unscheduled equipment charges."[15] Of the total equipment charges invoiced by Jarvis, 94% was for "unscheduled" equipment, with the remaining 6% for "scheduled" equipment. Apparently, the GSA equipment schedule was adopted from an equipment rate schedule utilized by the Munters Corporation. According to Marsh, Munters is "one of the leading restoration companies in the disaster recovery industry." Marsh opines that the use of such a comprehensive equipment listing "makes it difficult for any logical individual to comprehend how 94% of the restoration equipment invoiced by Jarvis should be interpreted as different and unscheduled." According to Marsh, scheduled items "represent readily available equipment," generally found in the contractor's own inventory or through other sources, while unscheduled items are considered uncommon and not readily available and are usually rented. While it is not entirely clear to the Court, Marsh apparently claims that in addition to improperly identifying scheduled equipment as unscheduled equipment, Jarvis also failed to produce "independent cost support (invoices)" to justify the charges. *Id.* at 11. Marsh makes a similar argument regarding scheduled versus unscheduled materials.

In other words, while Marsh initially claimed that *some* of the equipment and material was misidentified by Jarvis as "unscheduled," Marsh now claims that *all* of the

---

[15] *See* Marsh Rebuttal Report (docket number 22-5) at 9.

equipment and material was improperly claimed to be "unscheduled," or was otherwise unsupported by Jarvis' documentation. This has a dramatic effect on the markups to which Jarvis may be entitled. The table summary found on page 24 of the Marsh Report and the summary on page 15 of the Marsh Rebuttal Report are identical, with one exception. Marsh now asserts that the improper markups totaled $687,038.16, rather than $167,750.22. With that adjustment, the total amount disputed in the Marsh Rebuttal Report is $2,020,970.28.

### 4. *Analysis*

The Court concludes that the additional opinions expressed by Marsh in its rebuttal report are properly admitted as rebuttal evidence. In its initial report, Marsh opined that certain equipment and material were misidentified as "unscheduled," rather than "scheduled." In his report, Mr. Marchin disputes that claim and asserts that Jarvis "is in a better position than the authors of the Marsh report to determine what equipment and materials are provided for under the GSA schedules." That is, Marchin (or Jarvis) will apparently testify regarding whether certain equipment and materials were properly identified as scheduled or unscheduled. In its rebuttal report, Marsh addresses that issue and concludes that Jarvis did not properly justify its designation of the equipment and materials as "unscheduled." In other words, the opinions described in the Rebuttal Report rebut Marchin's opinions, and are just a variation of the opinions stated by Marsh in its initial report. While Marsh takes a more aggressive approach than it did in its initial report, the issue remains essentially unchanged. That is, the Court must determine at trial whether the invoices submitted by Jarvis properly identified the equipment and material as scheduled or unscheduled. All three expert reports, including the "amendments" found in the Marsh Rebuttal Report, address that issue.

Moreover, the Court believes that even if the rebuttal report is not considered proper rebuttal, it is authorized under FEDERAL RULE OF CIVIL PROCEDURE 26(e). That rule requires a party to supplement an expert's report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." The issue regarding whether equipment and material was properly designated as scheduled or

unscheduled was raised by Marsh in its initial report. "Upon further review," however, Marsh determined – in its opinion – that a greater percentage of the equipment and materials were misidentified, thereby substantially affecting the markup to which Jarvis may be entitled. Upon determining that their original opinion on this issue was "incorrect," Marsh had an obligation under Rule 26(e) to supplement its report on that material issue. Accordingly, the Court believes that the City is not precluded from offering expert testimony regarding the appropriate designation of equipment and material, including those opinions expressed by Marsh in the rebuttal report.

## V. ORDER

IT IS THEREFORE ORDERED that the Motion to Strike and Exclude Expert Testimony (docket number 22) filed by the Defendant is **GRANTED** in part and **DENIED** in part as follows: None of the experts will be permitted to testify at trial regarding their interpretation of the parties' contract or its legal effect. The City's expert will be permitted to testify regarding the opinions disclosed in its initial report and in its rebuttal report.

DATED this 15th day of July, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA